# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellant,

v

ANTOINE TEARSO HEARN,

      Defendant-Appellee.

UNPUBLISHED
December 13, 2018

No. 342845
Wayne Circuit Court
LC No. 15-008834-01-FH

Before: SHAPIRO, P.J., and CAVANAGH and K. F. KELLY, JJ.

PER CURIAM.

The prosecution appeals by leave granted[1] an order granting defendant's motion for a new trial following defendant's convictions on charges of forgery of a document affecting real property, MCL 750.248b, uttering and publishing a document affecting real property, MCL 750.249b, and tampering with evidence, MCL 750.483a(6)(a). We reverse.

This case arises out of the transfer of a parcel of real property via a quitclaim deed, which defendant recorded with the Wayne County Register of Deeds. The quitclaim deed stated that defendant was receiving an interest in the property from its owner, Barbara Jean Moore, an elderly member of defendant's church, and indicated that it had been signed by Moore. The quitclaim deed also indicated that Moore was present when it was notarized. However, Moore was in an assisted living facility in Kentucky on the date that the quitclaim deed was notarized.

As noted, defendant was convicted of forgery, uttering and publishing, and tampering with evidence with regard to the fraudulently signed quitclaim deed. Following the jury trial, defendant moved for a *Ginther*[2] hearing and a new trial in the trial court, claiming that William Winters, his defense counsel, denied him the effective assistance of counsel. The trial court granted defendant's motion for a new trial. The prosecution filed a delayed application for leave

---

[1] *People v Hearn*, unpublished order of the Court of Appeals, entered May 31, 2018 (Docket No. 342845).

[2] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

-1-

to appeal, which was denied by this Court.[3] The prosecution then filed an application for leave to appeal in the Michigan Supreme Court, which vacated the trial court's order granting defendant's motion for a new trial and remanded the case to the trial court "for further articulation of how the defendant was prejudiced by counsel's errors or to explain why a showing of prejudice was unnecessary." *People v Hearn*, 501 Mich 897; 901 NW2d 893 (2017). The trial court again granted defendant's motion for a new trial, and the prosecution now appeals.

As an initial matter, we address defendant's argument that the trial court was not required to make a finding regarding prejudice because Winters's performance was so deficient that he was deprived of his right to have his charges addressed in a meaningful adversarial proceeding. In support of his argument, defendant cites to *United States v Cronic*, 466 US 648; 104 S Ct 2039; 80 L Ed 2d 657 (1984). Generally, ineffective assistance of counsel claims are analyzed as set forth in *Strickland v Washington*, 466 US 668; 104 S Ct 2052; 80 L Ed 2d 674 (1984). See *People v Trakhtenberg*, 493 Mich 38, 51; 826 NW2d 136 (2012). The *Strickland* test provides that a defendant "has the burden to show both that counsel's performance fell below objective standards of reasonableness, and that it is reasonably probable that the results of the proceeding would have been different had it not been for counsel's error." *People v Frazier*, 478 Mich 231, 243; 733 NW2d 713 (2007). However, in *Cronic*, the United States Supreme Court found that "[t]here are . . . circumstances that are so likely to prejudice the accused that the cost of litigating their effect in a particular case is unjustified," including trials where "counsel entirely fails to subject the prosecution's case to meaningful adversarial testing . . . ." *Cronic*, 466 US at 658-659. Defendant correctly argues that, in such cases, "the attorney's performance is so deficient that prejudice is presumed." *Frazier*, 478 Mich at 243.

Defendant contends that Winters admitted at the *Ginther* hearing that he did not believe defendant was innocent. Defendant further contends that this testimony conclusively proves that Winters made no effort to advocate for defendant at all, thus depriving him of his right to an adversarial trial. When asked whether he believed defendant was innocent, Winters testified:

> I try not to be too callous and jaded, after all the years I've been down here.
>
> I want to believe people. But unfortunately, [defendant]'s criminal record presented some problems with regard to theft offenses, similar type offenses. I want to believe the best in people.
>
> So yes, I was gonna [sic] say, what you tell me is the Gospel. That that is [Moore's] signature.
>
> So yes, I, I wanted to believe him, but it's difficult because there's credibility issues here . . . . So, to answer your question, did I believe him, I don't even know if that's relevant, but I had doubts, frankly.

---

[3] *People v Hearn*, unpublished order of the Court of Appeals, entered September 14, 2017 (Docket No. 339279).

Although defendant contends that the testimony conclusively shows that Winters did not believe in defendant's claim of innocence, Winters's testimony merely suggests that Winters was doubtful of defendant's innocence. Winters's testimony does not conclusively prove that he believed defendant was guilty, or that he behaved as such at trial.

Further, regardless of Winters's personal opinions, the record demonstrates that defendant was not deprived of a meaningful adversarial trial. Defendant asks this Court to interpret *Cronic* to support the notion that an attorney's personal belief regarding a client's guilt or innocence is the sole indicator of whether the prosecution's case was subjected "to meaningful adversarial testing" under *Cronic*. However, defendant cites no caselaw supporting this presumption. Rather, "meaningful adversarial testing" under *Cronic* has been interpreted by our Supreme Court and this Court as applying where defense counsel fails to actively participate in a trial at all. See *People v Mitchell*, 454 Mich 145, 153 n 10; 560 NW2d 600 (1997) (noting that *Cronic* is properly applied "only in a 'narrow spectrum' of cases where the 'circumstances . . . [were] so egregious that the defendant was in effect *denied any meaningful assistance at all.*' "). This Court has also held that active participation in a case through cross-examining witnesses and making motions on a defendant's behalf constitutes "meaningful adversarial testing." *People v Anderson*, 322 Mich App 622, 631; 912 NW2d 607 (2018). Despite the reservations that Winters may have had, the record shows that he fully participated in the trial by cross-examining witnesses, making objections, and making a closing argument. Therefore, defendant's case was subjected to meaningful adversarial testing, and his claim of ineffective assistance of counsel was properly analyzed using the *Strickland* test. We next address the prosecution's argument.

The prosecution argues that the trial court abused its discretion in granting defendant a new trial because it failed to properly address the prejudice prong of the ineffective assistance of counsel test. The prosecution also argues that the trial court abused its discretion in granting defendant a new trial based on Winters's failure to consult or call a handwriting expert because defendant failed to provide supporting evidence for the claim that the absence of a handwriting expert prejudiced him. We disagree with the prosecution's assessment that the trial court failed to address the prejudice prong of the ineffective assistance of counsel test, but agree that the trial court nevertheless abused its discretion by granting defendant a new trial because defendant did not properly establish that he was prejudiced by Winters's failure to consult or call a handwriting expert.

We review for an abuse of discretion a trial court's decision on a motion for new trial, which occurs when the court renders a decision falling outside the range of principled decisions. *People v Dimambro*, 318 Mich App 204, 212; 897 NW2d 233 (2016) (citation omitted). "Whether the defendant received the effective assistance of counsel guaranteed him under the United States and Michigan Constitutions is a mixed question of fact and law." *People v Ackley*, 497 Mich 381, 388; 870 NW2d 858 (2015). When examining a claim of ineffective assistance of counsel, "this Court reviews for clear error the trial court's findings of fact and reviews de novo questions of constitutional law." *People v Dixon-Bey*, 321 Mich App 490, 515; 909 NW2d 458 (2017). "Clear error exists if the reviewing court is left with a definite and firm conviction that the trial court made a mistake." *People v Armstrong*, 490 Mich 281, 289; 806 NW2d 676 (2011).

To establish a claim of ineffective assistance of counsel, "a defendant must show that (1) counsel's performance fell below an objective standard of reasonableness and (2) but for counsel's deficient performance, there is a reasonable probability that the outcome would have been different." *Trakhtenberg*, 493 Mich at 51. The prosecution's argument concerns the second prong of the analysis, under which a trial court must determine whether defense counsel's performance was so deficient that it prejudiced defendant and detrimentally affected the outcome of the case. *Id*. Defense counsel is presumed to be effective, *Frazier*, 478 Mich at 243, and "defendant must overcome a strong presumption that counsel's performance constituted sound trial strategy," *People v Riley (After Remand)*, 468 Mich 135, 140; 659 NW2d 611 (2003).

The prosecution first argues that the trial court abused its discretion by failing to properly address the prejudice prong of the ineffective assistance of counsel test. On remand from our Supreme Court, the trial court was expressly directed to address whether defendant was prejudiced by Winters's performance at trial. At a subsequent *Ginther* hearing held in December 2017, the trial court stated that Winters did not sufficiently investigate the claim that Moore's signature was authentic. The trial court further found that, had Winters properly investigated the case by searching for evidence to prove defendant's innocence, there "could have been a different result of . . . [the trial court's] judgment on the case."

Furthermore, at the continued *Ginther* hearing held in February 2018, the trial court stated that, "in a forgery case bringing an expert is absolutely necessary," and that Winters's failure to consult with a handwriting expert constituted ineffective assistance of counsel. The trial court opined that "there [was] significant evidence that . . . could have impacted the [trial] . . . in a way that was favorable to [defendant]," and that Winters's performance materially affected the outcome of the trial. The trial court thus effectively stated that it believed Winters's performance prejudiced defendant because it had a negative effect on the outcome of the case, and that a different result was reasonably probable but for Winters's deficient performance. See *Trakhtenberg*, 493 Mich at 56 (citation omitted).

The prosecution also argues that the trial court abused its discretion by finding that defendant was entitled to a new trial. Overall, the prosecution is correct that defendant failed to establish that consulting a handwriting expert regarding the quitclaim deed would have resulted in the discovery of evidence favorable to the defense. A defendant must establish the factual predicate for an ineffective assistance of counsel claim. *People v Solloway*, 316 Mich App 174, 189; 891 NW2d 255 (2016) (citation omitted).

"An attorney's decision whether to retain witnesses, including expert witnesses, is a matter of trial strategy." *People v Payne*, 285 Mich App 181, 190; 774 NW2d 714 (2009). However, unless the failure to consult or call an expert witness deprived defendant of a substantial defense, this Court cannot substitute its judgment for that of counsel or assess counsel's competence with the benefit of hindsight. *Id*. A defense that might have changed the outcome of the trial is a substantial defense. *People v Chapo*, 283 Mich App 360, 371; 770 NW2d 68 (2009) (citation omitted). Specifically, Winters testified as follows:

> I wanted to focus on [defendant]'s intent, because it seems to me, without trying to offend him or anything, that he was not sophisticated in the law. That this was an honest mistake. That this was no criminal intent.

* * *

I think in, in this case, a defendant has to intend to commit a crime. And if it's an honest mistake, he's not guilty.

Winters's testimony indicates that his trial strategy would not have required evidence from a handwriting expert because he was attempting to argue that even if defendant *had* signed the quitclaim deed in Moore's name, he was unaware that doing so was illegal and had no intent to commit forgery. Further, defendant never offered proof that retaining a handwriting expert would have provided him with a viable defense, or that presenting a handwriting expert would have resulted in an outcome favorable to him. Moreover, defendant's new defense counsel, who represented defendant following the trial, failed to call a handwriting expert even when directly provided with the opportunity to do so at a *Ginther* hearing following remand from the Michigan Supreme Court. "Thus, defendant has not established a reasonable probability that but for [Winters]'s alleged error the result of the proceedings would have been different." *People v Ackerman*, 257 Mich App 434, 455-456; 669 NW2d 818 (2003). Accordingly, the trial court erred by finding that defendant was denied the effective assistance of counsel, and abused its discretion by granting defendant's motion for a new trial.

Reversed.

/s/ Mark J. Cavanagh
/s/ Kirsten Frank Kelly

-5-